THE NORTH RIVER STEAMBOAT COMPANY *v.* JOHN R. LIVINGSTON, Hopkins, 149–150.

AFTER the decision of the case of *Gibbons* v. *Ogden*, in the Supreme Court of the United States, the defendant Livingston equipped a steamboat called the "Olive Branch," which he caused to be enrolled and licensed, and with which he proceeded from the city of New York to Jersey City on the opposite shore, and after landing two boxes of goods and some passengers there, pursued his course to Albany. The company made an application for an injunction, and the defendant set up his coasting license and these facts in his defence.

The opinion of Chancellor Sanford, was in favor of the validity of the grant to L. and F. so far as navigation from port to port within the state by its own citizens, was concerned. He held that the termini of the voyage fix its character, as being or not subject to the state grant, and that a steam vessel having a license, and proceeding from a port in this state, may by touching at a port in an adjoining state, continue the voyage to any other port in this state. He held also that the intention to evade the state grant by such a navigation, would not affect this right, and denied the injunction on that ground only.

The plaintiffs on leave granted amended their bill so as to charge that the defendants first stopping at Jersey City was fraudulent and collusive, and intended to evade the operation and effect of the laws of this state, and not for any *bona fide* purpose of commercial intercourse; and that since her first trip, although she had performed upward of 50 passages between the cities of New York and Albany, yet she never had in the course of any of them, stopped at, opposite or adjoining, any port or place in New Jersey, but had

prosecuted her voyages direct from a wharf in the city of New York to a wharf in the city of Albany, and stopping at intermediate places.   The bill prayed an injunction against such direct intercourse, and all such indirect intercourse by way of New Jersey, unless in the prosecution of a *bona fide* voyage or commercial intercourse with New Jersey, and not for the purpose of evading the laws of this state relative to steamboats.

The Chancellor refused the injunction, so far as the navigation to or from another state was concerned, but granted it to restrain the defendant from navigating that vessel between the cities of New York and Troy, when there was no voyage to or from another state.   From the part of the order refusing the injunction against the indirect intercourse, the plaintiffs appealed to the Court of Errors, and upon the argument, the whole question, after some discussion between the counsel, was declared by the court to be open, although the respondents had not appealed from the part·of the order allowing the injunction, within the fifteen days allowed by the statute.

The cause was then argued at large.   Woodworth, J., delivered an opinion in favor of reversing that part of the decree appealed from, and granting the injunction against the boat, when there was no voyage made in good faith to another state, with which Sutherland, J., and 7 Senators, concurred.

Savage, Ch. J., delivered the opinion of the majority of the court, and discussed the claim of the plaintiffs to any exclusive right of navigation by steam in the *waters of the state.* He held that the case of *Livingston* v. *Van Ingen,* was not a binding authority on the court, inasmuch as the controversy there was not upon the effect of a coasting license, no such fact appearing in the case.   After restating the points decided by the Supreme Court of the United States, in *Gibbons* v. *Ogden,* he says : "From these premises, it seems to me to follow as a corollary, that vessels with a coasting license are authorized to navigate for the purpose of carrying on the coasting trade, in all the navigable waters of the state, in which the coasting trade can exist."   In commerce among the several states, subject to the control of Congress, he held

15

the coasting trade to be included, and the transportation of passengers to be a branch of that trade: that "there could be no pretence for denominating the grant as a ferry from Albany to New York.

"To speak of a ferry from Albany to New York, is as great an abuse of terms, as to talk of a ferry from New Orleans to Pittsburgh, or even from New York to Liverpool." The decree of the Chancellor was then affirmed by a vote of 22 to 9, and this monopoly after sixteen years of feverish existence, was annihilated for ever.